UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONNIE L. MORGAN, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-5700** |
| **MARLIN GUSMAN, ET AL** | **SECTION "B"(4)** |

### REPORT AND RECOMMENDATION

On March 21, 2007, this matter came before the Court with oral argument on the **Motion to Dismiss Defendant Cornel Hubert (Rec. Doc. No. 9)** seeking dismissal of the claims against Warden Hubert in his individual capacity based on the doctrine of qualified immunity. The motion was referred to the United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing, if necessary and submit Proposed Findings and Recommendations for disposition pursuant to **Title U. S.C. § 636(b)(B) and (C)**.

In the motion, Warden Hubert argues that he is not a "person" for purposes of suit in his official capacity under Title 42 U.S.C. § 1983. He also alleges that he is entitled to qualified immunity from suit in his individual capacity.

The plaintiff opposed the motion and conceded that he can not pursue claims against the Warden in his official capacity. However, the plaintiff also argues that Warden Hubert acted with intentional indifference to the plaintiff's right to protection from other inmates through his policies and the failure to train and supervise the subordinate officers and is thus amendable to suit in his individual capacity.

On April 3, 2007, the Court ordered the plaintiffs to file a reply, or amended or supplemental complaint as deemed appropriate, setting forth those facts sufficient to reply to the qualified immunity defense as allowed by Fed. R. Civ. P. 7(a) and the holdings of *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999) and *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir.1995)(en banc).

The plaintiff filed both a First Amended and Supplemental Complaint and a Reply Memorandum pursuant to the Court's Order.[1]  In both, the plaintiff alleges that Warden Hubert played a personal role in the incidents and acted with intentional indifference in failing to utilize or implement a policy regarding protective custody inmates transferred into his prison, the Elayn Hunt Correctional Center.

I.     **Factual Allegations Relevant to Warden Hubert**

The plaintiff, Ronnie L. Morgan, Jr. is a federal inmate who was housed in protective custody in the House of Detention ("HOD") within the Orleans Parish Prison system ("OPP") at the time of Hurricane Katrina.  The movant, Cornel Hubert, is the Warden of Elayn Hunt Correctional Center ("Hunt") and is sued in his individual and official capacities.  Sheriff Marlin Gusman is also a defendant but he is not a subject of the instant Motion to Dismiss.

This suit was filed pursuant to Title 42 U.S.C. § 1983 with counsel and the filing fee was paid.[2]  In the complaint, filed by retained counsel, Morgan alleges that he did not have food, water, and medical care at OPP after the electricity failed on August 29, 2005.  The toilets backed up with

---

[1]Rec. Doc. Nos. 20, 21.

[2]No state law claims are asserted.

human waste. He was not evacuated from the jail until September 1, 2005, when he was moved to I-10 and later transported by bus to Hunt.

He was placed with thousands of inmates in an open field which was surrounded by guards. Morgan claims to have told an unidentified defendant that he was in protective custody and needed to be moved. Another inmate, not the plaintiff, explained that he saw his enemies in the field and feared that he would be attacked. The unidentified defendant advised the plaintiff and other alleged protective custody inmates not to disclose their identities to other inmates. One protective custody inmate, again, not the plaintiff, was later attacked and, when he tried to get to the guards, shots were fired. Approximately 30 minutes later, the plaintiff was attacked and stabbed in the head and neck. When he approached the guards at the gate, they laughed at him and offered no help.

The plaintiff remained in blood-soaked clothes wandering the field, afraid to sleep. He was eventually transferred out of Hunt on September 2, 2005, having never received medical attention for his wounds.

As a result of the defendants actions or inactions, plaintiff sustained serious bodily injury which resulted in scarring. He also continues to suffer from headaches, sleeplessness and emotional damage stemming from the horrors to which he was subjected. He seeks monetary damages, costs and attorneys' fees.

**II.    Standards of Review**

    **A.    Motion to Dismiss**

Under Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint if it fails to state a claim upon which any relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). In considering a motion to dismiss, the court must accept as true all

well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). A complaint shall only be dismissed if it is beyond doubt that the plaintiff can prove no facts in support of his claim that would entitle him to relief. *Home Builders Ass'n of Ms., Inc. v. City of Madison, Ms.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

In resolving a Rule 12(b)(6) motion, the court is generally limited to considering only those allegations appearing on the face of the complaint. However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd Cir. 1990). Finally, while conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b)(6) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

### B.    **Qualified Immunity**

The defendants argue that they are entitled to qualified immunity because the plaintiff has failed to plead facts sufficient to show a constitutional violation under § 1983 or that the defendants acted unreasonably.

Qualified immunity shields government officials from individual liability for performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Colston v. Barnhart*, 130 F.3d 96, 98 (5th Cir. 1997); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532-33 (5th Cir. 1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity provides for mistaken

judgment and protects "all but the plainly incompetent or those who knowingly violate the law." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). A qualified immunity defense is analyzed under a two-step process. *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000); *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (on appeal after remand); *Colston*, 130 F.3d at 99.

The first step is to determine whether the plaintiffs have alleged a violation of a clearly established constitutional right under currently applicable constitutional standards. *Jacobs*, 228 F.3d at 393; *Hare*, 135 F.3d at 325; *Coleman*, 113 F.3d at 533. In determining whether a right is clearly established, this court is confined to precedent from the Fifth Circuit and the Supreme Court. *Shipp v. McMahon*, 234 F.3d 907, 915 (5th Cir. 2000). Therefore, a right is considered to be clearly established if, based on pre-existing law, the unlawfulness of the conduct in question is apparent. *Id*. In other words, the right is clearly established if its "'contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (other citations omitted); *accord Foster v. City of Lake Jackson*, 28 F.3d 425, 29 (5th Cir. 1994).

When the plaintiff alleges a constitutional violation so as to satisfy the first prong, the second step requires the Court to determine whether defendant's conduct was objectively reasonable under existing clearly established law. *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001); *Jacobs*, 228 F.3d at 393; *Foster*, 28 F.3d at 428-29. Officials who act reasonably but mistakenly are still entitled to the defense. Qualified immunity gives ample room for mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law. *Anderson v. Creighton*, 483 U.S. at 641; *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986); *Hare*, 135 F.3d at 325. The court can

determine as a matter of law whether a defendant is entitled to qualified immunity and, specifically, whether a defendant's conduct was objectively reasonable. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *White v. Balderama*, 153 F.3d 237, 241 (5th Cir. 1998); *Colston*, 130 F.3d at 99.

**III.    Analysis**

    **A.    Warden Hubert in His Official Capacity**

In order to succeed on a claim of a civil rights violation under Title 42 U.S.C. § 1983, a plaintiff must prove both that the constitutional violation occurred and that it did so because of an action taken by a "person" under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson*, 454 U.S. 312 (1981). However, it is a fundamental premise of the Supreme Court that a state actor sued in his official capacity is not considered a person for purposes of suit under § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). The plaintiff concedes this point. Thus, Warden Hubert's Motion to Dismiss should be granted in part as it relates to his official capacity.

    **B.    Warden Hubert in His Individual Capacity**

As noted above, the Court's inquiry in this case is two faceted. First, the Court must resolve that the plaintiff has stated a claim under § 1983 and second, whether Hubert's actions were objectively reasonable.

A supervisory official cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). A state actor may be liable under §

1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980).

In this case, the plaintiff has amended the complaint, and filed a Rule 7(a) response indicating the personal involvement by Warden Hubert.  The plaintiff also alleges that the Warden is not entitled to qualified immunity because, as the final policy maker, the Warden knew or should have known that his plan for placement and care of the incoming inmates violated his constitutional duty to protect the inmates.

Supervisory liability may exist "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987).  An official policy is:

1. a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] ... or by an official to whom the [entity] ha[s] delegated policy-making authority; or

2. A persistent, widespread practice of ... officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the entity's] policy.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992).  A plaintiff may also establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

The plaintiff has here at least alleged facts to indicate that the Warden implemented a policy, or failed to utilize a policy, in violation of plaintiff's constitutional rights and that he was the final policy-maker at Hunt.  The plaintiff also alleges that the Warden failed to properly train and supervise the subordinate officers.  *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991).  It appears therefore that the plaintiff has alleged a claim under the existing law pursuant to the requirements of § 1983.  Thus, for purposes of a motion to dismiss, the first prong of the qualified immunity query has been satisfied.

As for the second prong, whether Hubert acted objectively reasonable under existing law.  The plaintiff has now presented further support for his representation that the Warden did not act reasonably under the circumstances, even considering the urgency of the situation created after Hurricane Katrina.  In the instant motion, Warden Hubert argues only that the plaintiff bears the burden of establishing that the Warden acted unreasonably.  The Warden also argues the merits, vel non, of the plaintiff claims and allegations.  The Warden does not offer guidance to the Court regarding what his actions were or whether his actions, or inactions, even under the exigent circumstances of Hurricane Katrina, were reasonable.  The Court must accept the allegations of the plaintiff that the Warden's actions and inactions were unreasonable in light of the dangers posed to the plaintiff.

Assuming the facts argued by the plaintiff to be true, the Court can not find that the Warden acted reasonably in failing to do anything to consider the dangers posed to or otherwise protect protective custody inmates arriving from OPP, even in light of the chaotic circumstances alleged.  The motion must be denied under the showing made at this early stage of the proceedings.  The Court finds that Morgan's pleadings assert facts which, if true, overcome the defense of qualified

immunity at this stage of the proceedings. *Schultea*, 47 F.3d at 1433-34; *Wicks v. Mississippi State Employment Servs.*, 41 F.3d 991, 995 (5th Cir. 1995).

## IV.    Recommendation

It is therefore **RECOMMENDED** that the **Motion to Dismiss Defendant Cornel Hubert (Rec. Doc. No. 9)** be **GRANTED in part DISMISSING WITH PREJUDICE** the plaintiff's § 1983 claims against Warden Cornell Hubert in his official capacity only and **DENIED in part, without prejudice**, as to the plaintiff's claims against Warden Hubert in his individual capacity.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __3rd__ day of _____July_____, 2007.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**