UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RONNIE MORGAN                                    CIVIL ACTION

VERSUS                                           NO. 06-5700

MARLIN GUSMAN, ET AL                             SECTION "B"(4)

ORDER AND REASONS

Before the Court is the **Motion to Continue Hearing on Defendant's Motion for Summary Judgment (Rec. Doc. No. 39)** filed by the plaintiff, Ronnie Morgan.  The motion was referred to the United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing, if necessary and submit Proposed Findings and Recommendations for disposition pursuant to **Title U. S.C. § 636(b)(B) and (C)**.  The Court has determined that the motion can be resolved without an evidentiary hearing.

I.      Factual Allegations

The plaintiff, Ronnie Morgan, through counsel, filed the complaint pursuant to Title 42 U.S.C. § 1983 [1] against Cornel Hubert, the Warden of Elayn Hunt Correctional Center ("Hunt") and Orleans Parish Criminal Sheriff Marlin Gusman.  Morgan seeks compensatory damages, attorneys' fees and costs, as the result of damages he received when he was attacked by another inmate while temporarily located at Hunt.

---

[1] Counsel cites Title 42 U.S.C. § 1983, visa vi violation of the Eighth and Fourteenth Amendments, as the sole jurisdictional basis for the plaintiff's claims and as the sole basis for the plaintiff's entitlement to redress.  Rec. Doc. No. 1, p.1, ¶1; p.8, ¶35; p.9.  He has not alleged state law liability or invoked the Court's supplemental jurisdiction.

Morgan alleges that he was a federal inmate housed in protective custody in the House of Detention ("HOD") within the Orleans Parish Prison system ("OPP") at the time of Hurricane Katrina.  He alleges that, on August 28, 2005, Sheriff Gusman appeared at a press conference to announce that OPP had backup generators, was fully staffed, was operating under an emergency operations plan, and that the prisoners would remain in the jail.  Morgan claims that the electricity at the jail failed on August 29, 2005, and he was left without food, water, or medical care.  He also alleges that the toilets backed up with human waste.  He further alleges that he was not evacuated from the jail until September 1, 2005.

Morgan claims that, at the time of the evacuation, he was ordered at gunpoint to leave his personal belongings, including his legal paperwork.  He was moved by boat to Interstate 10 and later transported by bus to Hunt.

He alleges that he was placed with thousands of inmates in an open field which was surrounded by guards.  Morgan further claims to have told an unidentified prison guard that he was in protective custody and needed to be moved.  Another inmate (not the plaintiff) explained that he saw his enemies in the field and feared that he would be attacked.  The unidentified defendant advised the plaintiff and other alleged protective custody inmates not to disclose their identities to other inmates.  One protective custody inmate (not the plaintiff) was later attacked and he was shot at when he tried to get to the guards' attention.  Approximately 30 minutes after this, the plaintiff was attacked and stabbed in the head and neck.  When he approached the guards at the gate, they laughed at him and offered no assistance.

Morgan claims that he remained in blood soaked clothes wandering the field, afraid to sleep. He was eventually transferred out of Hunt on September 2, 2005, to the David Wade Correctional Center ("DWCC"), having never received protection or medical attention for his wounds at Hunt.

Morgan also complains that, while at DWCC, he witnessed guards beating inmates although he was not involved.  On September 3, 2005, he requested an Administrative Remedy Procedure ("ARP") form which was provided to him two days later.  He complained therein about the stabbing at Hunt and requested medical care.  Morgan alleges that Colonel Hanson appeared at his cell, taunting him by waiving the form.  The Colonel allegedly told Morgan all ARP forms went to him, suggesting that Morgan would receive no relief no matter how often he complained.  Morgan indicates that he never received a written response to his ARP form.  However, he wrote a letter to the Warden and, though he received no response, a nurse visited him.

He further alleges that, on September 12, 2005, he again spoke with Colonel Hanson about his need for medical care.  Colonel Hanson at that time told Morgan that he would have to shave his dreadlocks.  Morgan claims to be a Rastafarian.  Morgan alleges that his head was shaved, in spite of his religious conviction, and he "was beaten in the head with the clippers."[2]  He further claims that Colonel Hanson instructed the staff, including Sergeant Cummings, to beat and mace the plaintiff.

Morgan also claims that he informed officials at DWCC that he had asthma and required medical attention, but his complaints and requests for an ARP form were ignored.  He later obtained a form from another inmate and filed a grievance against Colonel Hanson.  He claims that Hanson appeared at his cell to threaten him and told him to drop the grievance complaint or he would be

---

[2]Rec. Doc. No. 1, p. 6, ¶23.

sorry.  On October 5, 2005, Morgan was placed in solitary confinement without a disciplinary write-up.  He remained there until February 6, 2006, when he was transferred back to OPP.

Morgan alleges that, based on the foregoing, Sheriff Gusman is liable and caused him harm as a result of the failure to have an adequate evacuation or emergency preparedness plan in place at OPP.  He also alleges that Sheriff Gusman failed to develop and pursue emergency policies and customs at OPP, which created a substantial risk of bodily harm to the plaintiff and other inmates, which establish a deliberate and gross failure to protect.  He alleges that these failures were the proximate cause of his injuries later received at Hunt.

Morgan also alleges that Warden Hubert failed to control and supervise his subordinates at Hunt which led to his assault.  He further claims that Warden Hubert's policies and customs at Hunt created a substantial risk of bodily harm which demonstrate a deliberate and gross failure to supervise his subordinates.  He specifies that his acts and omissions include the failure to house, feed and provide medical care, failure to provide for the safety of protective custody inmates from OPP, failure to train  his staff in matters of safety and protective custody, failure to provide adequate medical care.  He contends that these actions or inactions were the proximate cause of the serious bodily injury he sustained at Hunt and which resulted in scarring.  He also continues to suffer from headaches, sleeplessness and emotional damage stemming from the horrors to which he was subjected at Hunt.

Morgan also presents a myriad of other claims against several John Doe defendants arising out of the occurrences at Hunt.  He does not assert any claims in this complaint arising out of the events alleged to have occurred at DWCC.

4

## II.  **Plaintiff's Motion to Continue**

On July 3, 2008, Sheriff Gusman filed a Motion for Summary Judgment (Rec. Doc. No. 37) in which he seeks summary dismissal of Morgan's claims against him.  In the motion, Sheriff Gusman argues that Morgan has failed to allege or establish any personal involvement on the part of the Sheriff in the evacuation process.  He contends that, as a supervisor, he can not be held liable under § 1983 for the actions or inactions of his employees.

The Sheriff further argues that the Sheriff was exempted from the mandatory evacuation order imposed by the Mayor of New Orleans.  He also suggests that Morgan's claim that he had no adequate evacuation or emergency preparedness plan failed to demonstrate deliberate indifference in light of the fact that the events occurring during and after Hurricane Katrina, specifically the levee breaches which cause the flooding, were unprecedented and unanticipated.

In the instant motion, the plaintiff has moved for a continuance of Sheriff Gusman's pending Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(f).  Morgan alleges that issue is not joined as to all defendants and there has been no discovery in the case.  Morgan alleges that he should be allowed to pursue discovery which, as to Sheriff Gusman, will allow him to inquire about several matters, including the following: the policies and procedures in place regarding protective custody inmates; the policies and procedures in place regarding the evacuation of protective custody inmates; the measures taken by the Sheriff prior to the storm to ensure the safety of protective custody inmates; the measures taken during the evacuation to ensure the safety of protective custody inmates; the identity of the persons in charge of the evacuation and responsible for the transport and custody of the protective custody inmates; the identify of the persons in charge of determining which prisoners were sent to which facility, and whether those decisions were reasonable; the options

available for the evacuation of prisoners; the information conveyed by the Sheriff's Department to receiving facilities about protective custody status; and the training received by the Sheriff's Department personnel regarding policies for the segregation of protective custody inmates.  He would also seek information from other sources regarding whether information was sought or received from the Orleans Parish Sheriff's Office regarding protective custody inmates.

Plaintiff alleges that the continuance is necessary to allow the opportunity to obtain documents, take depositions and conduct other relevant discovery to adequately respond to a summary judgment.

Sheriff Gusman has filed an opposition to the continuance (Rec. Doc. No. 40) arguing that the matters into which the plaintiff wants discovery are not relevant to the claims asserted against Sheriff Gusman in the complaint.  Sheriff Gusman argues that Morgan has only raised failure to evacuate claims against the Sheriff.  He contends that the plaintiff has not alleged in the complaint that he, Sheriff Gusman, violated any constitutional rights with regards to his status as a protective custody inmate.  He argues that the allegations related to protective custody status and the injuries sustained at Hunt are not urged against him in the complaint.  Therefore, the Sheriff contends, the only relevant discovery would relate to the policies and procedures involving hurricane evacuation procedures, and not the protective custody inmates.

Sheriff Gusman further contends that, even if discovery as to the evacuation were allowed, it would not overcome the summary judgment motion since Morgan has not alleged and can not prove personal involvement or deliberate indifference on the part of Sheriff Gusman with respect to the conditions of the jail during and after the hurricane.

Finally, Sheriff Gusman argues that Morgan's allegation that his actions or inactions were the proximate cause of his injuries sustained at Hunt are state law tort matters, and would not entitle Morgan to relief under § 1983.

In his reply to the opposition (Rec. Doc. No. 44),  Morgan argues that the plaintiff's intent in the complaint was to raise claims regarding Sheriff Gusman's policies regarding protective custody and to hold him accountable for assuring that the protective custody inmates remained safe during the evacuation.  Morgan further argues that discovery is necessary to evaluate whether Sheriff Gusman had policies of that nature in place and whether those policies were adequate.

## III.    Standards of Review

In general, a district court should not grant summary judgment before the parties have completed discovery.  *Galaxy Tire, Inc. v. Terwilliger*, 189 F.3d 469, 1999 WL 548705 at *2 (5th Cir. 1999) (*citing Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 354 (5th Cir. 1989)).  This is especially true in cases where the motive and intent of a defendant are factors that must be shown in order for the plaintiff to prove his cause.  *Id*., at *2 (*citing as e.g.*, *Fine v. American Solar King Corp.*, 919 F.2d 290, 298 (5th Cir. 1990).

Rule 56(f) is a built-in safeguard designed to protect against a premature or improvident grant of summary judgment.  *See Washington v. Allstate Insurance Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) (*citing* 10A Charles Alan Wright et al., Federal Practice and Procedure § 2740 (2d ed.1983)); *Parakkavetty v. Indus Int'l, Inc.*, 2004 WL 354317, at *1 (N.D. Tex.  Feb.12, 2004) (""The Rule is an essential ingredient of the federal summary judgment scheme and provides a mechanism for dealing with the problem of premature summary judgment motions.") (*citing Owens v. Estate of Erwin*, 968 F. Supp. 320, 322 (N.D. Tex.1997)); *see also*, *Union City Barge line Inc. v.*

*Union Carbide Corp.*, 823 F.2d 129, 136 (5th Cir. 1987).  Rule 56(f) provides direction to the Court

when faced with an attestation that a party can not adequately oppose a summary judgment:

> If a party opposing the motion shows by affidavit that, for specified reasons, it
> cannot present facts essential to justify its opposition, the court may:
> (1)     deny the motion;
> (2)     order a continuance to enable affidavits to be obtained, depositions to be
>         taken, or other discovery to be undertaken; or
> (3)     issue any other just order.

By its very terms, to obtain a Rule 56(f) continuance, the nonmovant must, **by affidavit**,

present specific facts explaining its inability to make a substantive response and demonstrate "how

postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the

movant's showing of the absence of a genuine issue of fact." *Washington*, 901 F.2d at 1285 (quoting

*Sec. and Exch. Comm'n v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir.1980)).

Rule 56(f) motions are generally favored and should be liberally granted.  *Brown v. Miss.*

*Valley State Univ.*, 311 F.3d 328, 333 (5th Cir. 2002); *Stearns Airport Equipment Co., Inc. v. FMC*

*Corp.*, 170 F.3d 518 (5th Cir. 1999) (*citing International Shortstop, Inc. v. Rally's Inc.*, 939 F.2d

1257, 1267 (5th Cir. 1991)).  "Where the evidence that the non-moving party contends will create

a genuine issue for trial is in the exclusive possession of the moving party, a continuance of a motion

for summary judgment for purposes of discovery should be granted almost as a matter of course."

*Id*.  Nevertheless, district courts have considerable discretion in ruling on motions to suspend

summary judgment pending discovery.  *In re Segerstrom*, 247 F.3d 218, 228 n.9 (5th Cir. 2001).

## IV.     Analysis

In the instant matter, as outlined above, Morgan alleges that he is hampered in his ability to

respond to Sheriff Gusman's motion for summary judgment because there has been no discovery

in this case.  He argues that discovery will provide him with the opportunity to obtain information

about the policies, customs and training related to protective custody inmates and the evacuation processes in place at OPP at the time of Hurricane Katrina.

Although Sheriff Gusman challenges the nature of the claims urged against him, Morgan argues that he seeks relief against Sheriff Gusman as the result of these policies, specifically with respect to those which may have left him unprotected when he was sent to Hunt.  Assuming these allegations have been made, Morgan could only prove liability on the part of Sheriff Gusman if he can meet certain standards.  While the Court does not here limit the plaintiff's claims or tacitly grant summary judgment, the discussion must center around the allegations on notice in the complaint and the arguments made by Sheriff Gusman in the summary judgment.

As seems understood by counsel, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation."  *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980).  It is well settled that a supervisory official like Sheriff Gusman cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights.  *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979).

Thus, one theory of liability against Sheriff Gusman could arise from his personal role in providing safety to protective custody inmates before the storm and during the evacuation.  The plaintiff does not seem to allege such facts or engage this theory, though he suggests that it may become viable after discovery.

Instead, the plaintiff's allegations seem to stem from Sheriff Gusman's role as a policy-maker at the prison.  Supervisory liability may exist "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987).  An official policy is defined as:

1.  a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] ... or by an official to whom the [entity] ha[s] delegated policy-making authority; or

2.  A persistent, widespread practice of ... officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the entity's] policy.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992).

Under some circumstances, a plaintiff may also establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).  Under such a theory, the plaintiff would be interested in information regarding any policies in place or decisions made by Gusman within his role as supervisory of the jail or custodian of the inmates, especially those in protective custody.

In the instant case, Sheriff Gusman has listed five uncontested material facts in his Motion for Summary Judgment, summarized here: (1) the plaintiff was a convicted federal inmate in protective custody at OPP when Hurricane Katrina made landfall; (2) OPP is owned and operated by the Orleans Parish Sheriff's Office; (3) the plaintiff was evacuated from OPP to the Broad Street bridge by jail personnel on September 1, 2005; (4) the plaintiff was turned over to personnel from

the Louisiana Department of Corrections ("DOC") and loaded onto a bus owned by DOC to be transferred to Hunt; and (5) Hunt is owned and operated by DOC.

To be entitled to relief under Rule 56(f), the plaintiff must demonstrate how additional discovery is necessary to rebut the movant's showing of the absence of a genuine issue of fact, in this case, the five facts presented above. The plaintiff does not, however, seem to challenge these five uncontested facts. In fact, these matters are fairly admitted in the complaint. Instead, the motions and arguments before the Court center on policies and decisions, vel non, **not** addressed in the uncontested statement of facts or the sole exhibit attached to the defendant's motion for summary judgment.[3] The Court does not see where Sheriff Gusman has alleged uncontested facts related to these policies which need be challenged by Morgan.

Nevertheless, because the party opposing summary judgment does not bear a heavy burden, he "must conclusively justify his entitlement to the shelter of Rule 56(f) by presenting specific facts explaining the inability to make a substantive response ... and by specifically demonstrating how postponement of a ruling on the motion will enable him ... to rebut the movant's showing of the absence of a genuine issue of fact." *Lee v. Stalder*, 223 Fed. Appx. 315, 19 (5th Cir. 2007) (internal citations and quotations omitted). In this case, Morgan has not included with his motion to continue any affidavit, by counsel or otherwise, as required by Rule 56(f). *See Estate of Nicholson v. Farmers Ins. Co.*, 555 F. Supp.2d 671 (E.D. La. 2008) (plaintiff's Rule 56(f) motion denied for failure to file affidavit as required by the rule).

"The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56(f) in good faith and to afford the trial court the showing necessary to assess

---

[3]The sole attachment is a copy of the mandatory evacuation order issued by the Mayor of the City of New Orleans which exempted essential personnel of the Orleans Parish Sheriff's Office and its inmates. Rec. Doc. No. 37-4.

the merit of a party's opposition." *First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988). "When the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues, such as intent, are involved, courts have not always insisted on a Rule 56(f) affidavit if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary." *Investors Title Ins. Co. v. Bair*, 232 F.R.D. 254 (D.S.C. 2005) (*citing First Chicago Int'l*, 836 F.2d at 1380-81; *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97-98 (2d Cir. 2000); *Farmer v. Brennan*, 81 F.3d 1444, 1449-50 (7th Cir. 1996); *Dean v. Barber*, 951 F.2d 1210, 1214 n.3 (11th Cir. 1992)).

Specifically, if the nonmoving party's objections before the district court "served as the functional equivalent of an affidavit," *First Chicago*, 836 F.2d at 1380, and if the nonmoving party was not lax in pursuing discovery, then the court may refuse to consider a motion for summary judgment as premature, even though the nonmovant did not record its concerns in the form of a Rule 56(f) affidavit. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). The United States Fifth Circuit has held it to be an abuse of discretion not to allow further discovery where discovery to date has been clearly inadequate and a continuance has been requested under Rule 56(f). *See Xerox Corp.*, 888 F.2d at 355.

In this case, it is conceded by the parties that no discovery has been conducted at all in this case. According to the record, as of this writing, the Court's denial of Warden Hubert's motion to dismiss based in part on qualified immunity is currently on appeal at the Fifth Circuit. In addition, Warden Hubert has not yet answered the complaint, possibly because of the pending appeal. Furthermore, the pending summary judgment does not address issues of fact or provide affidavits or other competent evidence related to Sheriff Gusman's policies, vel non, regarding the evacuation

12

or safety policies at OPP or regarding inmates in protective custody at the prison or during the evacuation, and whether any of that is relevant to the granting or denial of the summary judgment.

The Court is, therefore, faced with no discovery and an incomplete record, compounded by Morgan's failure to comply fully with the affidavit requirement of Rule 56(f).  The latter notwithstanding, the Fifth Circuit has afforded the Court much discretion in granting this type of motion, even where the moving party has not filed an affidavit *per se*.  Morgan has, through the instant motion, at least provided the Court with an outline of the areas of discovery he wishes to pursue with specific emphasis on Sheriff Gusman's policies, which claims he indicates may also need to be clarified by amendment.

Nevertheless, at this juncture in the case, discovery as to any and all issues would be of assistance to the Court in determining whether there is a merit to Morgan's complaint against Sheriff Gusman and Warden Hubert.  The Court finds that the parties should be allowed to pursue discovery.

Since no discovery has been done, and likely will not begin until such time as the appeal is resolved or Warden Hubert answers, the Court does not see a need to keep Sheriff Gusman's motion pending indifinitely.  For this reason, the Court finds that a just ruling under Rule 56(f) would be to dismiss the Sheriff's Motion for Summary Judgment without prejudice to his ability to re-file the motion at a later date, if appropriate in light of the information disclosed in discovery.  Accordingly,

It is therefore **ORDERED** that the **Motion to Continue Hearing on Defendant's Motion for Summary Judgment (Rec. Doc. No. 39)** filed by the plaintiff is **GRANTED**.

It is further **ORDERED** that Sheriff Gusman's **Motion for Summary Judgment (Rec. Doc. No. 37)** is **DISMISSED WITHOUT PREJUDICE** to be re-filed at a later date if appropriate.

New Orleans, Louisiana, this ____12th____ day of _____August_____, 2008.


_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**