UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RONNIE L. MORGAN, JR.**                                      CIVIL ACTION

**VERSUS**                                                     NUMBER: 06-5700

**MARLIN GUSMAN, ET AL**                                       SECTION: "B"(4)

### ORDER AND REASONS

Plaintiff's Motion for Extension of Time to Submit Exhibit is hereby **GRANTED** (Record Document Number 105). The untimely submission of Plaintiff's affidavit does not prejudice Defendant.

Defendant contends that Plaintiff's declaration is either improper as to form or inadmissable as to substance due to hearsay. Both contentious are rejected. The first is frivolous because Plaintiff's express declaration " affirm(ing) under penalty of perjury, that the foregoing is true and correct..." substantially complies with 28 U.S.C. §1746. In administering oaths to jurors and witnesses, courts often use the term "swear, state or affirm" together.

The second contention is also baseless - out of court statements attributed to a party to litigation do not constitute inadmissible hearsay. FRE 801(d)(2). Further, present sense impressions and excited utterances by the identified inmate-witness are exceptions to the hearsay rule. FRE 803. The affidavit contains direct eyewitness accounts of the sued-upon incident by Plaintiff himself. Defendant also faults Plaintiff for failing to

allege all facts giving rise to the incident in his complaint. Notice pleading is still the federal standard for complaints, even after *Ashcroft, et al v. Iqbal*, 129 S. Ct. 1937; 173 L. Ed. 2d 868 (2009) and *Bell Atlantic Corp., et al v. Twombly, et al*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

Discovery, thus far, revealed contradictory facts from each side that prevent summary disposition on qualified immunity or other grounds. The Warden of Hunt Correctional Center is cited in Plaintiff's affidavit as the person who allegedly told Plaintiff and other protective custody inmates that they were going onto a field at that facility with inmates in the general population. Despite pleas for segregation made to him by Plaintiff and other protective custody inmates, including Wayne Priestly, the Warden placed them on the field where they were allegedly attacked and stabbed within seconds by the general population inmates. According to Plaintiff's affidavit, he heard Priestly inform the Warden or Guard prior to the attack that he, Priestly, saw inmates at the gate to the field who would attack him. In describing the attacks by inmates upon himself and inmate Priestly, Plaintiff also allegedly saw Priestly being shot by guards with rubber bullets while trying to flee from the inmate attacks. According to Plaintiff the Warden/Guard told them not to reveal their protective custody status. The Warden presents refuting evidence denying the events as alleged by Plaintiff. These and other material factual

disputes create triable issues as to whether Defendant Warden, and others, were deliberately indifferent to an objective and substantial risk to Plaintiff's safety. *Morgan v. Hubert*, 335 Fed. Appex. 466 (5th Cir. 2009).

Additionally, Plaintiff provided the time frame within which the Warden had to prepare for receipt of evacuated prisoners from Orleans Parish.  (See Record Document Number 94, "Plaintiff Morgan's Schiltea Heightened Pleading").  According to Defendant's "After Action Summary of the Evacuation...", Record Document Number 95-1, p. 1, Hunt began preparations on Saturday, August 27, 2005 to receive inmates who were being evacuated from other parishes and, specifically, at about 2:00 a.m. Tuesday, August 30 "senior staff was called out to begin implementation of a plan to evacuate inmates from Jefferson and Orleans Parishes."  According to that same summary at Record Document Number 95-1, p. 2, "During the morning hours (on Wednesday, August 31) the evacuated inmates...began to be unruly and minor fights began..."  Thereafter, the Hunt summary contains entries of a security breach by inmates during the noon meal on Thursday, September 1, 2005. This resulted in further movement of inmates to another part of the prison, during which "Warning shots were fired from the less lethal shot-gun" in response to "one of the evacuees attempt to run away from security".  Record Document Number 95-1, p. 2.  Warden Hubert's own deposition testimony states he was aware as early as

Tuesday, August 30 that his facility needed to prepare to receive inmate evacuees from Orleans Parish.  Plaintiff contends the incident at issue occurred on Thursday, September 1, 2005.

Given due difference to prison officials' authority in the management of their facilities, especially during more than usual stressful times, i.e. in the aftermath of Hurricane Katrina, and mindful of the burdens and obligations associated with exercising that authority, we cannot summarily conclude at this stage from above-noted factual circumstances that rights afforded under the Eighth Amendment were complied with.  This resolves all pending motions filed as of October 18, 2010.

New Orleans, Louisiana, this 19th day of October, 2010.

UNITED STATES DISTRICT JUDGE